IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-00363-01-CR-2-NKL |
| ) | |
| JEFFREY W. THOMPSON, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORANDUM,
WITH REQUEST FOR DOWNWARD VARIANCE
PURSUANT TO *GALL V. UNITED STATES*.**

COMES NOW the defendant, Jeffrey W. Thompson, by and through his counsel, and hereby submits this Sentencing Memorandum in the above-referenced case, pursuant to Rule 32 of the Federal Rules of Criminal Procedure. Mr. Thompson is requesting a downward variance from the sentencing range set forth in the advisory Sentencing Guidelines pursuant to *Gall v. United States*, 552 U.S. 38 (2007). Sentencing is presently scheduled for March 9, at 4:00 p.m.

Mr. Thompson and the undersigned counsel have thoroughly reviewed the Presentence Investigation Report ("PSR") and have discussed all issues with respect to sentencing in this case. Further, Mr. Thompson, through counsel, previously responded to the probation office with various objections and/or comments to the PSR. This Memorandum is respectfully filed to assist the Court in determining an appropriate sentence.

1

## I. PROCEDURAL BACKGROUND

The defendant was originally charged in a thirteen count indictment alleging one count of Bank Fraud in violation of 18 U.S.C. §1344, three counts of Theft, Embezzlement, or Misapplication by a Bank Officer or Employee in violation of 18 U.S.C. §656, six counts of making False Entries, Reports and Transactions in violation of 18 U.S.C. §1005, and three counts of making False Statements to the FDIC in violation of 18 U.S.C. §1007.

On November 17, 2010, Mr. Thompson voluntarily entered his plea of guilty to Counts 6, 7, and 8 of the indictment which charged him with making false statements to the FDIC in violation of 18 U.S.C. §1007. By virtue of his guilty plea, Mr. Thompson admitted facts to support his guilty plea. He acknowledged that his actions were illegal and wrongful.

Mr. Thompson entered into a written plea agreement with the United States. This Court accepted the defendant's plea of guilty and ordered the preparation of a Presentence Investigation Report by the probation office. The PSR has been finalized in this matter.

## II. UNRESOLVED ISSUES WITH RESPECT TO PSR

Mr. Thompson's objections to the PSR are set forth in the addendum. Mr. Thompson notes the objections for the record. It is not anticipated that evidence or argument will be introduced at sentencing. As noted, the objections do not affect the applicable guidelines range.

## III. SENTENCE TO BE IMPOSED

As the PSR indicates, Mr. Thompson's total offense level is 28. He is within Criminal History I. As a result, he is facing an advisory sentencing range of 78-97 months. This

2

sentencing range should also be tempered by the factors set forth under 18 U.S.C. § 3553.[1] The defendant respectfully requests that this Court consider a variance and impose a sentence of one year and one day. At the outset, it should be reiterated that Mr. Thompson acknowledges his wrongdoing. He does not diminish his wrongful conduct, nor does he excuse it.

## **APPLICATION OF 18 U.S.C. § 3553(a) FACTORS**

As the Supreme Court has long recognized, "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). With the United States Sentencing Guidelines now rendered "advisory only," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), a district court has substantial discretion in fashioning a sentence appropriate to the individual circumstances of the defendant and the unique facts of the offense. While the Court must consider the guideline

---

[1]Most circuits agree that there is a three-step approach to sentencing. First, the guidelines are determined. Then, departures are considered, and finally, variances are analyzed. See, *United States v. Robertson*, 568 F.3d 1203, 1210 (10th Cir. 2009), *United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir. 2006), c.f. *United States v. Johnson*, 427 F.3d 423 (7th Cir. 2006). This is similar to the approach discussed by the Supreme Court in *Gall v. United States*, 552 U.S. 38, 49-50 (2007), although the *Gall* Court includes the consideration of guideline-approved departures as part of calculating the applicable guidelines range. (". . a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party.") For the reasons stated herein, the defendant requests a probationary sentence which is grounded primarily on 18 U.S.C. § 3553(a) factors and related variance arguments regardless of the court's final determination of the adjusted total offense level.

3

range in a case, "the Guidelines are not the only consideration." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). See *Kimbrough*, 128 S. Ct. at 564 ("the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence").

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. §3553(a)(1)-(7) without giving mandatory weight to the sentencing guidelines. The Sentencing Reform Act instructs a Court to impose a sentence "sufficient, but not greater than necessary," to comply with the stated purposes of punishment. 18 U.S.C. § 3553(a). A sentence of one year and one day will address all goals of The Sentencing Reform Act. 18 U.S.C. § 3553(a) states, in pertinent part, as follows:

> (a) Factors to be considered in imposing a sentence.--The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>     (1) the nature and circumstances of the offense
>         and the history and characteristics of the defendant;
>     (2) the need for the sentence imposed–
>         (A) to reflect the seriousness of the
>          offense, to promote respect for the law, and to provide just
>         punishment for the offense;
>         (B) to afford adequate deterrence to criminal conduct;
>         (C) to protect the public from further crimes of the
>         defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for...
> (5) any pertinent policy statement...
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victim of the offense.

In view of his guilty plea, the defendant recognizes that his own conduct is the cause of his shame and embarrassment. However, it is respectfully suggested that the consideration of general and specific deterrence, proper punishment and an opportunity for rehabilitation are satisfied with a sentence as set out herein.

In addition, a district court "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall*, 128 S. Ct. at 597. Moreover, the Supreme Court has specifically ruled that, in balancing the §3553(a) factors, a judge may determine that, "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." *Kimbrough*, 128 S. Ct. at 564. See *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) (a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or [that] the case warrants a different sentence regardless"). A district court may now vary from the applicable guideline range "based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 128 S. Ct. at 570.

5

Moreover, certain courts have recently held that, if a court ultimately concludes after considering the 3553(a) factors that a non-guidelines sentence is appropriate, the court's sentence is entitled to highly deferential review by the appellate court only for a clear abuse of discretion. See, *United States v. Hucksin*, 529 F.3d 1312 (10th Cir. 2008). See also, *United States v. Burns*, 577 F.3d 887, 894-95 (8th Cir. 2009).

Other statutory sections also give the district court discretion in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is not an appropriate means of promoting correction and rehabilitation. In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient, but not greater than necessary, to meet the goals of sentencing.

**A)** **18 USC §3553(a)**

    **1.** **Nature and Circumstances of the Offense & History and Characteristics of the Defendant**

Crucial to understanding both the circumstances of the offense and the history and characteristics of Jeff Thompson is an analysis of his background. Mr. Thompson, though born in Shawnee Mission, Kansas, was raised in the small town of Hume, Missouri. The son of the former president of Hume Bank, Mr. Thompson did not plan on a career in the banking business, but rather wanted to work as a farmer. However, following the sudden death of his father in 1993, Mr. Thompson began working full time at Hume Bank, eventually

6

progressing to bank president himself. It is important to note that Mr. Thompson did not have any formal training working with any other banks besides the one in Hume. His knowledge of the banking business was strictly limited to Hume Bank and to what his father taught him.

Furthermore, of significant note in Mr. Thompson's case is the nature and circumstances of this particular offense. While it is true that Mr. Thompson earned a good salary as the bank president a salary that reached the level of about $80,000 per year by the end of his employment, there has been absolutely no evidence that the conduct at issue caused any personal financial gain to Mr. Thompson. There have been no allegations of money laundering or of Mr. Thompson living an extravagant lifestyle during the period indicated in the indictment. This fact is particularly relevant given the current economic climate. The media continues to report about high level bank executives participating in deep-seated financial crimes and preying on unsuspecting consumers in order to enrich their own wallets. Mr. Thompson did not act in a similar fashion.

The charges to which he has pleaded guilty involve making false statements on FDIC reports. Effectively, Mr. Thompson was not disclosing the true financial condition of Hume Bank to examiners. However, there was has been no evidence that Mr. Thompson was operating under malicious intent or for personal financial gain.

While the PSR contains a summary of Mr. Thompson's social history, the truest reflection of his character is found in the numerous letters of support written on his behalf. The letters are written by people who passionately support this defendant. Interestingly, the

letters show a wide spectrum of individuals from the Hume community who support Jeff. They include the Superintendent of the Hume Schools, former bank customers, former bank employees, church leaders, and a Missouri State Highway Patrolman. All of the letters note Mr. Thompson's involvement in the community, his participation on boards, and his community service. Mr. Thompson clearly has the love and support of his family, as well as others in the community.

Another consideration in the decision to impose a sentence of one year and one day is the harsh effect a greater sentence will have on the defendant's son. As noted in numerous support letters, Billy Thompson, Mr. Thompson's 14 year old son, suffers from a severe mental and physical deficiencies. In fact, Becky Loftin, who was Billy's special education teacher from 2nd until 7th grade, states that "Billy's limitations make it difficult for him to develop social friends his own age, so he spends much of his time with his dad and looks up to him." Mrs. Loftin requests a lenient sentence because "Billy's continued progress truly does depend on his active involvement with his dad." Mr. Thompson has a 16 year old daughter, Makena, who is about to graduate from high school who also needs the support of her father as she proceeds through college.

His history and characteristics justify an other than guideline sentence.

### 2. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

A sentence of incarceration is not always necessary in order to satisfy this sentencing mandate. It is the goal of sentencing to prevent unnecessary incarceration and to limit prison sentences to those individuals who pose the greatest risk to society. As renowned criminologist Norval Morris has consistently argued, and reflective of the recent Supreme Court decisions, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed."

Mr. Thompson must be punished for his actions. However, it is imperative that a punishment be given which is proportional to the social harm committed, as determined by the Court, to serve the goals of sentencing.

**(A) To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

While Mr. Thompson in no way deprecates the seriousness of the offense, his offense conduct resulted in primarily monetary harm to the FDIC. Moreover, Hume, Missouri is a community of approximately 350 citizens in Bates County, Missouri. Since the indictment in this matter, Mr. Thompson has had to face the public shame and humiliation that came along with the failure of the bank, the very bank that had existed for over 90 years in the small community, and the same bank that had thrived under the leadership of Mr. Thompson's own father. A felony conviction accompanying a term of one year and one day would adequately satisfy this goal.

**(B) To Afford Adequate Deterrence to Criminal Conduct**

9

A review of the criminological literature reveals that to the extent that criminal sanctions do have a general deterrent effect, the certainty (how certain an offender will be deterred) of punishment has a far greater deterrent effect than the severity of the sanction. Title 18 U.S.C. §3553(a)(2)(B)'s directive that the sentence imposed afford adequate deterrence to criminal conduct does not require a lengthy term of imprisonment.

**(C)    To Protect the Public from Further Crimes of the Defendant**

As noted above, Mr. Thompson has lived the past three years under the cloud of humiliation and distrust that his actions brought upon himself and his family's name. This fact is made clear in the letters written to the Court on his behalf. Mr. Thompson realizes that he has disgraced himself and others close to him as a result of his arrest and conviction, and he will insure that he never does so again.

The defendant presents low risk of recidivism. Defendants "over the age of 40...exhibit markedly lower rates of recidivism in comparison to younger defendants. "Recidivism rates decline relatively consistently as age increases, from 35.5% under age 21 to 9.5% over 50." See *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate*, at 12, 28 (2004). Many courts have recognized this factor in sentencing. *United States v. Lucania*, 379 F.Supp.2d 288, 297 (E.D.N.Y. 2005) ("Post-*Booker* courts have noted that recidivism is markedly lower for older defendants."). *United States v. Carmona-Rodriguez* 2005 WL 840464, *4 (S.D.N.Y. April 11, 2005) (unpub.) (Where 55 year old woman pled guilty to distribution of drugs sentence

of 30 months (below guideline range) proper in part "in view of the low probability that Carmona-Rodriguez will recidivate."

### (D) To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Mr. Thompson possesses a degree from Missouri Southern University. He has been operating a milk hauling business over the past two years in order to make ends meet for himself and his family. Mr. Thompson suffers from no mental health disorders nor does he suffer from substance abuse issues. As evidenced by the letters of support, Mr. Thompson has numerous connections to the community and can continue to offer his services freely to the community while working in an attempt to satisfy the significant money judgment that will likely be issued against him.

### 3. The Kinds of Sentences Available

18 U.S.C. §3553(a)(3) requires the Court to consider "the kinds of sentences available" in a given case. Here, the Court has available many forms of punishment other than imprisonment which will permit it to craft an appropriate sentence for Mr. Thompson - probation, home detention, community confinement, fines, and community service. Indeed, employing some combination of these types of sentences will allow the Court to both punish Mr. Thompson sufficiently, and allow him the opportunity to continue to rebuild his life.

With the Guidelines now advisory and with the enhanced sentencing discretion mandated by *Gall*, the Court is now able to use the availability of such non-custodial sentences to further calibrate a sentence so that it is no "greater than necessary" to

11

accomplish the statutory purposes. As a result, in Mr. Thompson's case, where there are so many mitigating factors, the availability of these alternatives under the law weighs in favor of the Court's use of them and against the imposition of a lengthy prison sentence. Indeed, courts have used this power in recent years to employ probation, home detention or community confinement to address unique circumstances, even where the applicable guideline range would formerly have prohibited anything but imprisonment.

### 4-5. The Sentencing Guidelines Provisions

While the Court must consider the applicable guideline range and Sentencing Commission policy statements pursuant to 18 U.S.C. § 3553(a)(4) and (5), it is respectfully suggested that any sentence within this range would be "greater than necessary" to serve the purposes of sentencing in this case. There are mitigating factors regarding Mr. Thompson's offense and his personal circumstances which are plainly not accounted for in the sterile arithmetic of the computation of the applicable guideline range.

In *Gall*, the Supreme Court ruled that, under the law, a district court "may not presume that the Guidelines range is reasonable." 128 S. Ct. at 597. Indeed, this is a case which warrants a non-guideline sentence.

Each of the relevant sentencing considerations can be satisfied without imposing an advisory guideline sentence. The felony conviction alone serves as a general and specific deterrent. His conduct since the investigation and indictment and his past history of abiding the law is credible evidence that he is not a candidate for recidivism. He has been shamed by his conduct. In short, there are substantial reasons as to how a sentence substantially

12

below the advisory guideline range satisfies the concerns of 18 U.S.C. § 3553 and the holding in *Booker*.

An analysis of sentencing data performed by the U.S. Sentencing Commission reflects that judges are imposing below-Guidelines sentences that are justified under a § 3553(a) analysis. The percentage of below-Guidelines "non-government sponsored" sentences that relied entirely on consideration of § 3553(a) factors in imposing a variance in cases in which no downward departure was given have increased from 7.3 in 2006 to 8.1 in 2007, to 10.1% in 2008, 15.9% in 2009, and a high of 17.9% in 2010 <u>U.S. Sentencing Commission, Preliminary Fiscal Year Data Report</u>, 4th Quarter Release 2010, at Table 1 and Figure A; <u>U.S. Sentencing Commission, Quarterly Sentencing Updates</u>, Final Reports Years FY06, FY07, FY08, FY09at Table 1.

Mr. Thompson is well aware that his conduct has placed emotional strain on his family, which he deeply regrets. His conduct has also affected numerous other individuals, which he also regrets. A sentence consistent with the suggestions herein would serve all of the goals of punishment established by the Sentencing Reform Act.

**IV.     CONCLUSION**

A sentence of one year and one day for Mr. Thompson is consistent with *Gall's* instruction that district courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 128 S.Ct at 598.

For the reasons set forth above, the defendant seeks a sentence of one year and one day with whatever requirements the court desires. Mr. Thompson also respectfully requests that he be designated to the BOP prison camp closest to his family, that he be allowed to self-surrender on or after June 1, 2011, so that he can assist and support his family until the end of the current school year.

Respectfully submitted,

WYRSCH HOBBS & MIRAKIAN, P.C.

By: s/ CHARLES M. ROGERS
    Charles M. Rogers    #25539
    Nathan J. Owings    #56568
    1000 Walnut
    Suite 1600
    Kansas City, MO 64106
    Tel: (816) 221-0080
    Fax: (816) 221-3280
    ***Attorneys for defendant Thompson***

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was filed electronically by ECF/CM with the United States Court for the Western District of Missouri on this 2nd day of March, 2010 with notice of case activity generated and sent electronically to all counsel of record.

                                          s/ Charles R. Rogers
                                            ***Attorney for Defendant***